# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT M. BENSON,<br><br>    Petitioner,<br><br>  vs.<br><br>CHERYL PLILER, et al.,<br><br>    Respondents.<br>_____ / | No. CIV S-01-1623-MCE-CMK-P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

       Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court is petitioner's fourth amended petition for a writ of habeas corpus (Doc. 22). Respondents filed an answer (Docs. 25 & 26) and petitioner filed a reply (Doc. 37).

///
///
///
///
///
///

# I. BACKGROUND

A.  **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> On November 10, 1996, Tina W. was to meet her friend Reggie Hamilton at a Vallejo bar for her twenty-second birthday. She went to the bar once or twice a month. When Hamilton did not show up, appellant Robert Michael Benson talked with her for about an hour. He invited her to go to a restaurant for dinner as a birthday treat. She had seen Benson at the bar five or six times before. Tina accepted his invitation and Benson behaved politely all evening. She drove him home to Vacaville that night. Later, Tina was not certain, but testified that they may have gone to a Taco Bell restaurant that evening. They did not engage in any sexual activity. Benson did not suggest such a thing.
>
> On the night of November 22-23, 1996, Tina saw Benson at the Vallejo bar. She arrived between 11 and 11:30 p.m. Tina arrived at the bar with Hamilton, who played pool with Benson. About 12:30 a.m., she drove Hamilton home, then returned to the bar to continue a conversation with his father. As Tina left the bar's restroom, Benson passed her, grabbed her arm and said "I'm coming home with you tonight." She laughed and told him "No, you are not." Tina went back out to the bar and chatted with Benson's girlfriend. Benson tried to sit on Tina's lap, but she pushed him away. About 1:30 a.m., Tina left the bar and walked to her car. Benson came up behind her and pushed her into her car. Again, he told her that he was coming home with her; again, she told him that he was not. Tina repeatedly told him to get out of her car, but he refused. Instead, he hit her in the face and told her to start driving. Benson told Tina, "You are going to do what I tell you to do."
>
> Now frightened, Tina froze, realizing that Benson was not joking. Shaking and crying, she obeyed his instructions because she feared he would hurt her again. He held onto her hair as they drove. He directed her to an empty parking lot, where she stopped the car when he told her to do so. Benson put his hand up Tina's shirt, rubbed her breast and told her he intended to "[f]uck [her] in the ass." He had her remove her shirt and grabbed a handful of her hair, pulling it hard. Benson removed his pants and exposed his penis. Then, he pulled Tina by her hair, shoved her head into his lap and told her to "suck his dick." He forced his penis into her mouth. When Tina tearfully asked him to stop, Benson laughed at her. He

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

pushed her down on her back, removed her pants, pushed her legs so that her knees were against her head and placed his penis in her vagina. Benson was rough; the intercourse was painful to her. Tina asked him to stop, but he laughed and babbled that he was "initiating" her.

Benson grabbed Tina's arm and flipped her over onto her stomach. He slapped her on the buttocks repeatedly and Tina began screaming. Benson told her that he would keep slapping her if she kept screaming, but he stopped when she screamed loudly. He climbed over her, told her he was going to "fuck [her] in the ass" and placed his penis in her anus. It was incredibly painful and Tina screamed again, telling Benson that he was hurting her. Benson told her "I could hurt you worse. I could kill you if I wanted to. . . . [¶] . . . [¶] I'm not going to stop until you shut up." Tina was crying; Benson still held her hair and was pushing her face into the back of the seat. He sodomized her more than once; she lost count of how many times he shoved his penis into her, stopped and then started again.

Benson told Tina to sit up. Wanting it all to end, she complied. He shoved her face into his lap and told her to "[h]andle my business." She asked him to stop, to leave her alone. Benson told her that she was going to do what he wanted her to do. Holding her by the hair, he again put his penis into her mouth. Tina felt disgusted; gagging, she wanted to vomit. Benson ordered her to roll back onto her stomach and he sodomized her again. Tina screamed,; the anal sex hurt even more than the first time did. Benson said that she was going to make him come. While his penis was still inside her anus, Benson pulled Tina's head back and bit her neck, shoulder and back.

When Benson finally removed his penis from her anus, Tina got dressed, and he told her to drive him home. She did not recall much of what happened after the assault. During the ride, Tina wished that the car door would fall open and Benson would fall out of the car. Tina remembered Benson shaking her and asking her if she understood what he said when she arrived at his home. He told her not to talk to anyone. If she did, Benson said that he would kill her or hurt her family. He told her that he would come to her workplace tomorrow to be sure she did not talk.

The next thing Tina remembered was crawling across the threshold of her home, her buttocks and rectum too painful to allow her to walk upright. It was early in the morning. She was very upset. She was shaking violently, looked pale, and was unable to focus. She spoke incoherently. She felt like she could not breathe. Her eye was puffy – Tina later developed a black eye. She was in such pain that she was unable to sit or lay down, and she was crying and vomiting. Her sister asked her what was wrong, but she could not speak. Her sister summoned Tina's mother. When asked what happened, she said "He raped me."

Tina was taken to the hospital by car. Tina could not sit in a normal position – her mother placed the seat down and Tina lay on her side. At the hospital, Tina was met by police. She was still very emotional, crying and shaking. She identified her attacker to police. Her

3

back, stomach and buttocks were swollen and welted, as if she had been spanked. She found it painful to move. She could only lay on her stomach for the examination. Any other position was painful. Tina was unable to sit easily for a while. She also had bite marks and scratches on her back and shoulder. Her left eye was swollen. Photographs were taken of her injuries. Benson was arrested on November 24, 1996, at his girlfriend's home. Police questioned him in a videotaped interview about the Tina W. incident. They obtained and served a search warrant on November 25, 1996.

**B.  Procedural History**

Petitioner was convicted of one count of rape, one count of forced oral copulation, two counts of sodomy, and one count of misdemeanor false imprisonment as to victim Tina W. The jury also found as true three felony enhancements for great bodily injury. As to a second victim, Jackie Z., petitioner pleaded guilty to misdemeanor sexual battery. Petitioner was sentenced to a determinate term of 14 years, plus an indeterminate term of 15 years to life.

Petitioner's conviction and sentence were affirmed on direct appeal by the California Court of Appeal in a reasoned decision issued on February 15, 2000. The California Supreme Court denied review without comment or citation on May 24, 2000. Petitioner also sought habeas relief, which the California Supreme Court denied on June 11, 2003.

Respondents concede that petitioner has exhausted all the claims raised in the instant petition.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. For instance, when the state court reaches a decision on the merits, but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether the state court clearly erred in its

4

application of Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). Similarly, when it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where the AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

Under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court

decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

        A state court decision is reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

### III.  DISCUSSION

Petitioner raises the following claims: (1) the trial court's jury instructions under CALJIC Nos. 2.50.01 and 2.50.1 violated petitioner's due process rights by reducing the prosecution's burden of proof; (2) California Evidence Code § 1108 is unconstitutional; (3) the trial court erred in failing to exclude evidence under California Evidence Code § 352; (4) the evidence was insufficient to sustain the jury's findings of great bodily injury; (5) the trial court's jury instructions concerning great bodily injury allowed the jury to find great bodily injury associated with one charge based on the infliction of great bodily injury during the commission of another charge; (6) the trial court erred in failing to instruct the jury sua sponte on the need to find each great bodily injury enhancement separately; (7) the state court misapplied California Penal Code § 654 with respect to punishment for the great bodily injury enhancements; (8) petitioner's due process rights were violated by admission of expert testimony on rape trauma syndrome; and (9) petitioner received ineffective assistance of counsel with respect to the rape trauma syndrome expert testimony.[2]

---

[2] This summary of claims is based on the assertions petitioner makes in the fourth amended petition, as follows:

> Ground 1: . . . Writ of habeas corpus is the proper and only recourse available to [petitioner] to seek redress under the laws of the United States.
>
> Ground 2: Petitioner asserts that review should be granted to determine whether CALJIC 2.50.01 [and CALJIC 2.50.1] regarding the application of evidence code Section 1108 violates petitioner's rights to due process and fair trial and allows the jury to convict the defendant on proof of less than be[y]ond a reasonable doubt.

A. **Jury Instructions Claims (Claims 1, 5, and 6)**

Petitioner challenges the jury instructions given with respect to evidence of other sexual offenses (CALJIC No. 2.50.01) and other crimes (CALJIC No. 2.05.1). Petitioner also challenges the jury instructions given with respect to great bodily injury.

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972). Thus, a challenge to jury instructions does not generally give rise to a federal constitutional claim. See Middleton, 768 F.2d at 1085) (citing

---

Ground 3: Petitioner asserts that Evidence Code 1108 violates his federal constitutional rights to due process and equal protection of the law.

Ground 4: Petitioner asserts that review be granted to determine whether or not the court did in fact abuse its discretion and violates his federal constitutional rights to a fair and due process in failing the exclude section 1108 evidence Code under code section 352 . . .

Ground 5: Petitioner asserts that his federal right to due process and fair trial when the jury considered the same injury in making separate findings of great bodily injury . . . on separate counts and that there was not sufficient evidence of [great bodily injury] to sustain the jury findings.

Ground 6: Petitioner's rights to a fair trial and due process were violated when section 654 which prohibits the imposition of multiple punishments for separate findings of [great bodily injury] were based on the same injury.

Ground 7A: Petitioner asserts that his rights to due process and a fair trial were violated when the state's expert testimony on rape trauma syndrome.

Ground 7B: And petitioner was subject to ineffective assistance of trial counsel by the ineffective scope of the defense counsels objects to state's expert's testimony and defense counsel lack of preparation and strategy to deal with this expert testimony, in violation of Sixth Amendment rights.

Engle v. Isaac, 456 U.S. 107, 119 (1982)).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147). In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)). Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)). Petitioner's burden is "especially heavy" when the court fails to give an instruction. Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

It is well-established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). Therefore, due process is violated by jury instructions which use mandatory

presumptions to relieve the prosecution's burden of proof on any element of the crime charged. See Francis v. Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510 (1979). A mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain predicate facts are proved. See Francis, 471 U.S. at 314. On the other hand, a permissive presumption allows, but does not require, the trier of fact to infer an elemental fact from proof of a basic fact. See County Court of Ulster County v. Allen, 442 U.S. 140, 157 (1979). The ultimate test of the constitutionality of any presumption remains constant – the instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced by the government, to find the ultimate facts beyond a reasonable doubt. See id. at 156 (citing In re Winship, 397 U.S. at 364).

        1.     Jury Instructions Under CALJIC Nos. 2.50.01 and 2.50.1 (Claim 1)

At trial, the court instructed the jury pursuant to CALJIC Nos. 2.50.01 and 2.50.1 as follows:

> Evidence has been introduces for the purpose of showing that the Defendant committed a sexual offense other than those charged against the Defendant in this case. If you find that the Defendant committed a prior sexual offense, you may infer that the Defendant had the disposition to commit the sexual offenses. If you find that the Defendant has this disposition, you may also infer that he was likely to commit and did commit the crimes charged against him.
>
> However, evidence that the Defendant committed a prior sexual offense is not sufficient by itself to prove that he committed the charged offenses. The weight and the significance of the evidence, if any, is for you to decide.
>
> Within the meaning of the preceding instruction the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed crimes other than those charged for which he is on trial.
>
> You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that the Defendant committed that other crime.

Petitioner argues that these instructions allowed the jury to find him guilty of the charged offenses by less than proof beyond a reasonable doubt. Specifically, petitioner states:

> . . . Under [these] instruction[s], if the jury found by a preponderance of the evidence that appellant had committed the prior sexual offense, they could infer that he committed the charged offense, as long as there was *some* other evidence to prove guilt of the charged offense. Of course, the instruction[s] did not specify what quantum of other evidence was necessary. Thus, the jury could have found appellant guilty based on proof less than beyond a reasonable doubt.

In addressing this claim, the state court held:

> We . . . reject Benson's claim that the jury instructions in this case confused the jury and allowed it to find him guilty of the charged offenses by a burden of proof less than that of guilt beyond a reasonable doubt. To prevail on this claim, Benson must establish a reasonable likelihood that the jury misunderstood the instructions as a whole. [citation omitted]. The instructions did not provide that the charged crimes could be proved by a preponderance of the evidence. Instead, they expressly provided that only the [prior sexual offense] must be proved by a preponderance of the evidence. If the jury found by a preponderance of the evidence that Benson committed a [prior] sexual offense . . ., then the jury was allowed – but not required – to infer another evidentiary fact: that Benson had a disposition to commit the same or similar type of offense. We reject the claim that these jury instructions violated Benson's right to have his guilt determined beyond a reasonable doubt.

Because the state court applied the correct federal rule of law, this court reviews under the "unreasonable application of" standard of review. Under this standard, the court concludes that the state court's decision was not an unreasonable application of controlling federal law. As the state court observed, the challenged instructions did not, by their plain language, permit the jury to find that petitioner had committed the charged offenses by any quantum of proof less than a reasonable doubt. Specifically, the jury was instructed that "evidence that the Defendant committed a prior sexual offense is not sufficient by itself to prove that he committed the charged offenses." Moreover, the jury was instructed pursuant to CALJIC No. 2.01 that ". . . each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt." The jury was also instructed pursuant to CALJIC No. 2.90 that "[a] defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is

11

satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt." Therefore, in the context of the overall charge to the jury, see Prantil, 843 F.2d at 817, the court concludes that there was no possibility that the challenged instructions undermined the jury's responsibility to find guilt based only on evidence establishing the elements of the charged offenses beyond a reasonable doubt.

### 2. Jury Instructions Regarding Great Bodily Injury (Claims 5 and 6)

First, petitioner claims that the trial court's jury instructions on great bodily injury violated his due process rights. Specifically, petitioner challenges the following instructions:

> It is alleged in Counts Three, Four and Six that in the commission or attempted commission of rape and/or sodomy, the defendant . . . inflicted great bodily injury on the alleged victim T.W.
>
> If you find a defendant guilty of rape and/or sodomy, it then will be your duty to determine whether that defendant personally inflicted great bodily injury on the alleged victim T.W. in the commission of rape and/or sodomy.

Petitioner asserts that these instructions ". . . very likely misled the jury to believe a great bodily injury finding was warranted on each offense if they found that great bodily injury was inflicted during any one of these offense[s], or as a result of the aggregate injuries of all three offense[s]." In addressing this claim, state court held:

> Benson contends that the trial court's repeated use of the phrase "rape and/or sodomy" was very likely to have misled the jury into believing that it could find a great bodily injury enhancement allegation associated with one offense to be true based on the infliction of great bodily injury in relation to another offense. We disagree . . . [I]n the context of this case, we do not believe that the jury instructions are likely to have misled the jury . . . The separate verdict forms of the three sexual offenses for which great bodily injury enhancements were alleged instructed the jury to determine the great bodily injury enhancement allegation only if it found Benson guilty of the charged offense. The specific finding issued by the jury on each of the three enhancement allegations stated that "during the commission of the above offense" Benson inflicted great bodily injury on Tina. Under these circumstances, we reject Benson's claim that the jury instruction given was misleading.

This court reviews under the "unreasonable application of" standard because the

state court applied the correct legal rule by exploring whether the instructions misled the jury. As the state court observed, the special verdict forms returned by the jury indicate that the jury found that petitioner had inflicted great bodily injury during the course of committing each separate offense. In other words, the jury found three separate instances of great bodily injury – one for each charged sexual offense. In light of the jury's specific findings of great bodily injury for each offense, this court concludes that the jury could not have been misled as petitioner asserts.

Second, petitioner claims that the trial court erred in failing to sua sponte instruct the jury on the need to find each great bodily injury enhancement separately. This argument lacks merit based on the above discussion. Specifically, when viewed in the context of the separate special verdict forms completed by the jury, which shows that the jury did in fact make separate findings of great bodily injury for each charged offense, this court concludes that the jury was not misled. In short, the jury was properly instructed.

### B. Constitutionality of California Evidence Code § 1108 (Claim 2)

Petitioner claims that California Evidence Code § 1108 is facially unconstitutional.[3] In particular, petitioner asserts that § 1108 violates due process and equal protection. Evidence Code § 1108 provides, in pertinent part, as follows: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not . . . inadmissible . . ." so long as its probative value is not outweighed by its prejudicial effect. Cal. Evid. Code § 1108(a); see also Cal. Evid. Code § 352.

According to the California Supreme Court, California Evidence Code § 1108 is essentially identical to Federal Rule of Evidence 414. See People v. Falsetta, 21 Cal.4th 903, 912 (1999). Because the Ninth Circuit has rejected due process and equal protection challenges to

---

[3] Petitioner does not raise an as-applied challenge.

Rule 414, see United States v. LeMay, 260 F.3d 1018, 1026-27, 1030-31 (9th Cir. 2001), and because Rule 414 is operatively the same as Evidence Code § 1108, the court concludes that petitioner's facial constitutional challenges fail as a matter of law.

### C. Claims Based on Application of State Law (Claims 3, 7, and 8)

Petitioner raises three claims which challenge the application of state law. As outlined above, habeas relief under § 2254 is generally unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085. In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill, 368 U.S. at 428. Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling, for example, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994).

#### 1. Application of California Evidence Code § 352 (Claim 3)

Returning to the evidence of prior sexual offenses allowed under California Evidence Code § 1108, petitioner argues that the trial court erred in failing to exclude such evidence pursuant to California Evidence Code § 352, which prohibits the admission of evidence whose prejudicial effect is outweighed by its probative value. See Cal. Evid. Code § 352. In addressing this claim, the state court weighed the probative value of prior sex offense evidence against its prejudicial effect and concluded that, under California law, such evidence is probative of a propensity and the probative value increases with the similarity to the charged acts. See Falsetta, 21 Cal.4th at 915, 920. As to prejudicial effect, the state court concluded – again under California law – that, because the prior incident was similar, was presented to the jury with a degree of certainty, and was no more egregious than the charged conduct, the trial court did not abuse its discretion in allowing the § 1108 evidence.

Petitioner contends that the state court misapplied <u>Falsetta</u> in concluding that the § 1108 evidence was not overly prejudicial. While petitioner's argument may have been appropriate in state court, it is not for the federal court to say that a state's highest court erred in interpreting that state's law. Moreover, under the federal law regarding admission of propensity evidence, such evidence is proper where it would bolster the victim's credibility and where the prior offenses are similar to the charged crimes. See <u>LeMay</u>, 260 F.3d at 1027. For these reasons, the court cannot conclude that the state court's decision was either "contrary to" or an "unreasonable application of" federal law.

### 2. Application of California Penal Code § 654 (Claim 7)

Returning to the great bodily enhancement findings, petitioner argues that the state court misapplied California Penal Code § 654, which provides that a defendant found guilty of an act made punishable in different ways by different provisions of the California Penal Code may not be punished under more than one provision. See Cal. Penal Code § 654. Petitioner contends that he should not have been punished for three separate great bodily injury enhancements for ". . . the same conduct and injury . . ." Assuming without deciding that § 654 applies to enhancements and not just offenses, the state court rejected petitioner's claim, reasoning as follows:

> The record on appeal contains substantial evidence to support the . . . finding that Benson inflicted great bodily injury by as many as five different means – with the rape and two acts of sodomy interspersed among his acts of brutality. Tina's testimony establishes these acts in this order – Benson (1) blackens her eye, compels her to orally copulate him, and *rapes* her in such a rough manner that she suffers (2) vaginal tears; he repeatedly (3) slaps her buttocks, then *sodomizes* her in a particularly painful manner, causing (4) anal tears; he again forces her to orally copulate him, then *sodomizes* her again, (5) biting her while committing this final act. Given this evidence, we are satisfied that the trial court properly imposed three separate punishments for the three findings of great bodily injury. (emphasis in original).

Given the record in this case, as summarized above by the state court, this court cannot conclude that petitioner was punished multiple times for the same conduct. Rather, it is clear that

15

petitioner was punished for each separate infliction of great bodily injury.

     3.  <u>Admission of Rape Trauma Syndrome Expert Testimony (Claim 8)</u>

    Finally, petitioner challenges the trial court's admission of expert testimony concerning rape trauma syndrome. Specifically, petitioner asserts that the state court misapplied the California Supreme Court's holding in <u>People v. Bledsoe</u>, 36 Ca.3d 236 (1984). Again, it is not for this court to second-guess a state's highest court on a question of that state's law.

    In an effort to raise this claim to a federal constitutional level, petitioner makes the conclusory statement that ". . . the admission of this evidence lessened the prosecution's burden of proof and violated appellant's federal constitutional . . . rights." Petitioner offers no argument in support of this contention, and the court cannot find any support for it in the record. To the contrary, the overall charge to the jury made it abundantly clear that the jury was required to find guilt beyond a reasonable doubt. The admission of the rape trauma syndrome evidence could not have lessened this burden.

  **D.**  **<u>Sufficiency of the Evidence of Great Bodily Injury (Claim 4)</u>**

    Petitioner claims that there was insufficient evidence to support the jury's findings regarding great bodily injury. When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Under <u>Jackson</u>, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. <u>See id.</u> It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Id.</u> "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." <u>Roehler v. Borg</u>, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state

law. See Jackson, 443 U.S. at 324 n.16.

As the trial court instructed, under California law, imposition of a great bodily injury enhancement requires the jury to find the following: "'Great bodily injury,' as used in this instruction, means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury." Having reviewed the entire record, the court finds that the state court accurately described the evidence supporting the jury's great bodily injury findings:

> Reading the record in the light most favorable to the jury's findings, we find substantial evidence to support the jury and trial court findings. In this case, Benson beat Tina brutally – he hit her in the face, blackening her eye. He slapped her repeatedly on the back and buttocks, raising welts on her skin as if she had been spanked. Benson bit Tina. Tina suffered multiple anal and vaginal tears as a result of the vigorous nature of the intercourse Benson forced on her. She was in such pain from the incident that she was unable to walk or sit for three or four days. These injuries are not necessarily present in the commission of rape or sodomy. (citation omitted).
>
> Tina also testified that Benson laughed as she cried out in pain from the roughness of the intercourse and begged him to stop hurting her. This evidence raises the inference that Benson deliberately inflicted pain on Tina – that he derived pleasure from her trauma. (citation omitted). This inference bolsters our conclusion that the injuries sustained reflected a degree of brutality and violence beyond that necessarily present in a sexual offense case. (citation omitted).

As stated above, the question for this court is whether rational jurors could reach the conclusion that the jurors in Benson's case reached. See Roehler, 945 F.2d at 306. Based on the evidence in this case, the court concludes that any rational jury could have, and would have, reached the same conclusion.

### E. Ineffective Assistance of Counsel (Claim 9)

Petitioner claims that his trial counsel was ineffective for failing to object to the prosecution's rape trauma syndrome expert testimony. The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's

17

performance fell below an objective standard of reasonableness. See id. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id. In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In this case, the state court addressed petitioner's ineffective assistance of counsel claim as follows:

> [T]he declarations establish that trial counsel's decision not to object was a tactical choice. The second . . . declaration . . . states that once the trial court ruled that the evidence would be admitted, he decided not to object in order to use the evidence to his advantage – to create the sense in the jurors' minds that the evidence benefitted the defense. He also hoped to avoid confusing the jury about the symptoms of rape trauma syndrome and of Tina's prior disassociation, encouraging the jury to conclude that Tina's prior psychological condition affected her credibility about the sexual assault testimony she offered. He also believed the testimony was so overbroad that it would not be harmful to Benson. According to appellate counsel, this declaration includes all the reasons trial counsel gave for his trial decision.

As trial counsel's decision was a tactical choice, Benson's claim of ineffective assistance of counsel appears doomed.

Because the state court applied the correct federal constitutional rule, this court reviews this decision under the "unreasonable application of" standard. Under this standard, and mindful that there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made," Hughes, 898 F.2d at 702, the court cannot conclude that the state court's analysis represents an "unreasonable application of" controlling federal constitutional law.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus be denied and that the Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 29, 2006.

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE